# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:19-CR-702S** |
| | § | |
| **RODRICK DARNELL THOMAS,** | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States

Attorney  for the Southern District of Texas, and Sherri L. Zack, Assistant United

States Attorney, and the defendant, Rodrick Darnell Thomas ("Defendant"), and

Defendant's counsel, pursuant to Rule **11(c)(1)(A)** of the Federal Rules of Criminal

Procedure, state that they have entered into an agreement, the terms and conditions

of which are as follows:

### Defendant's Agreement

1.    Defendant agrees to plead guilty to Count **1** of the Superseding

Indictment.   Count 1 charges Defendant with **Stalking**, in violation of Title 18,

United States Code, Section 2261A(2)(B).   Defendant, by entering this plea, agrees

that he is waiving any right to have the facts that the law makes essential to the

punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2.   The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 2261A(2)(B), is imprisonment of not more than 5 years and a fine of not more than $250,000.00.   Additionally, Defendant may receive a term of supervised release after imprisonment of **up to** 3 years.   *See* Title 18, United States Code, sections 3559(a)(4) and 3583(b)(2).   Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for **up to** 2 years, without credit for time already served on the term of supervised release prior to such violation.   *See* Title 18, United Stated Code, sections 3559(a)(4) and 3583(e)(3).   Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.   Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.   The payment will be by cashier's check or money order,

2

payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4.   Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status.  Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States.   Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Waiver of Appeal and Collateral Review

5.   Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a

conviction or sentence after the judgment of conviction and sentence has become

final.    Defendant knowingly and voluntarily waives the right to appeal or

"collaterally attack" the conviction and sentence, except that Defendant does not

waive the right to raise a claim of ineffective assistance of counsel on direct appeal,

if otherwise permitted, or on collateral review in a motion under Title 28, United

States Code, section 2255. In the event Defendant files a notice of appeal following

the imposition of the sentence or later collaterally attacks his conviction or sentence,

the United States will assert its rights under this agreement and seek specific

performance of these waivers.

6.    In agreeing to these waivers, Defendant is aware that a sentence has not

yet been determined by the Court.    Defendant is also aware that any estimate of the

possible sentencing range under the sentencing guidelines that he/she may have

received from his/her counsel, the United States or the Probation Office, is a

prediction and not a promise, did not induce his/her guilty plea, and is not binding

on the United States, the Probation Office or the Court.    The United States does not

make any promise or representation concerning what sentence the defendant will

receive.    Defendant further understands and agrees that the United States

Sentencing Guidelines are "effectively advisory" to the Court. *See United States v.*

*Booker*, 543 U.S. 220 (2005).    Accordingly, Defendant understands that, although

4

the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7.   Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

8.   The United States agrees to each of the following:

(a)   If Defendant pleads guilty to Count 1 of the superseding indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

(b)   If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

9.   The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment.   This plea

agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.   It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

10.    The United States reserves the right to carry out its responsibilities under guidelines sentencing.   Specifically, the United States reserves the right:

(a)    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)    to set forth or dispute sentencing factors or facts material to sentencing;

(c)    to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)    to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)    to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

11.    Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only

6

advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

**Rights at Trial**

12.     Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a)     If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

7

(b)   At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf.   If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court; and

(c)   At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

13.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Count(s) One of the superseding indictment.   If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.   The following facts, among others would be offered to establish Defendant's guilt:

Starting in December of 2018, and continuing through June of 2019, Jane Doe 1, a licensed Mental Health Counselor at Texas Department of Criminal Justice (TDCJ) psychiatric unit Jester IV, received four sexually explicit letters from an inmate.   Jester 4 is located in Galveston, Texas, within the jurisdictional limits of the Southern District of Texas. The inmate was identified as Rodrick Darnell Thomas, the Defendant.   Thomas was in state custody serving a sentence at that

time. In the letters, Thomas discusses how he wants to have a life with Jane Doe 1 when he is released from prison.    His release date for that offense was known to be October 22, 2019.

Jane Doe 1, who was scared and concerned when she received the first letter. Her fear and distress grew with each additional letter.   Jane Doe 1 informed the TDCJ Warden, as well as, TDCJ-OIG, and her employer, University of Texas Medical Branch (UTMB).    Jane Doe 1, due to her position, knew Thomas was in custody for a violent felony.

Jane Doe 1, is a mental health professional woman who has worked with prisoners for many years.    Jane Doe 1 was assigned to the UTMB at TDCJ Jester IV Correctional Institution Division Psychiatric Facility.    As a therapist there, she performed group and solo counseling over a proscribed 21 day period.    The program is known as the Mood program.   To be assigned to Jester IV an inmate must be diagnosed as suicidal or homicidal.

Thomas, originally housed in the Stiles unit of TDCJ, suffered an overdose of Tegratol.   He was moved to the Hospital Galveston Unit and then transferred to Jester IV unit E1 pod where he was placed on a 72-hour hold.    This is where Jane Doe 1 came into contact with Thomas.   Jane Doe 1 first observed Thomas in his cell when she was talking to an inmate in the cell across from Thomas on a Friday.

9

The following Monday, she met with Thomas and explained the requirements of the Mood program.

Thomas claimed he understood the requirements and told Jane Doe 1 "glad you'll be my therapist."   Over the course of his time in that unit, Jane Doe 1 noticed that Thomas would stare at her for long periods of time during the group sessions. Cell side, Thomas would say to Jane Doe 1, "I want to be in a relationship, I want to be your husband."   Jane Doe 1 would remind Thomas that she was his therapist and that their relationship was professional. Before Thomas was transferred out of her unit, he told Jane Doe 1 that he was going to find her.   At that time, she did not give it much thought as inmates often stated these type of things.

Jane Doe 1 indicated that she did not reveal any personal information about herself during group or private sessions.   She did mention she had a dog during a session on grief and loss.   Her practice was to keep conversations with inmates as broad and general as possible when referring to herself.   Her employer (UTMB) requires all employees to wear name badges that had their first and last names as well as their dates of birth visible.   The letters, signed by Thomas, with the prison return address were sent to Jane Doe 1's home address.

In the letters, Thomas refers to Jane Doe 1 as "Peaches" and "Kim Karma," referenced a scar on her chest and a "black stalker boyfriend."   When questioned

10

about this, Jane Doe 1 indicated that Thomas never referred to her by those nicknames in person.   She does have a visible scar on her chest that she never discussed with Thomas, and she has no idea what Thomas meant when he referenced a "black stalker boyfriend."

The investigation revealed that therapists are never alone with the inmates and that they are always in view of correction officers.   None of her co-workers has never witnessed Jane Doe 1 having any inappropriate contact with inmates nor have they ever heard anything that would indicate that Jane Doe 1 is anything other than professional.

At the beginning of Thomas's three week stay at Jester IV, he was placed on level 1 restrictions which meant he was denied access to the day rooms.   In conversations about the letters sent by Thomas, co-workers observed Jane Doe 1 was visibly upset and crying.   It was learned that Jane Doe 1 had placed a "Stop Mail" order on Thomas but despite that Jane Doe 1 received 2 more letters.

The letters sent to Jane Doe 1 were very graphic and descriptive about what Thomas intended to do to and with Jane Doe 1 when he was released.   The letters were written in manner that would suggest Thomas thought he and Jane Doe 1 were interested in each other sexually and that he wanted to be her intimate and life partner. The letters go on about the life Thomas planned on having Jane Doe 1.   The

letters, signed by Thomas, had gang references and sexually graphic descriptions of what the Thomas intended to do to Jane Doe 1 when they were reunited.

Further, the fact that Thomas made the effort to obtain her address and was able to send letters even after his mail privileges were restricted caused Jane Doe 1 additional substantial emotional distress.

It is clear from the information gathered from the victim and witnesses that the Defendant's actions could reasonably intimidate or harass Jane Doe 1 and that his behavior caused or attempted to cause and could reasonably be expected to cause substantial emotional distress to Jane Doe 1.   The United States Postal Service, the manner in which the letters were delivered, is a means and facility of interstate and foreign commerce.

### Breach of Plea Agreement

14.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.   Any information and

documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

15.   This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he has any financial interest.   Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he/she has an interest, unless Defendant obtains the prior written permission of the United States.

16.   Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement.   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

13

17.   Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.   Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

18.   Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution

19.   Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction.   Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss.   Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s).   Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

14

**Forfeiture**

20.    Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

21.    Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

22.    Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

23.    Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

**Fines**

24.    Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable

immediately, and Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

25.   This written plea agreement, consisting of 19 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

26.   Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _____Houston_____, Texas, on ____November 17_____, 20 20.

_____
Defendant

Subscribed and sworn to before me on ____November 17_____, 20 20.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____
Sherri L. Zack
Assistant United States Attorney
713-567-9374

By: _____
Gerry Montalvo
Attorney for Defendant

17

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:19-CR-702S** |
| | § | |
| **RODRICK DARNELL THOMAS,** | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          November 17, 2020
Attorney for Defendant                                        Date

I have consulted with my attorney and fully understand all my rights with

respect to the indictment pending against me.   My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.   I have read and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____          _____
Defendant                                                        Date   November 17, 2020

19